UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RECEIVED

03 NOV 28 PM 3: 55

CLERK
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

ARTHUR R. CLARK, JR.,

    Plaintiff,

    vs.

CITY OF TAMPA, a municipality;
BRIAN C. GENTRY, TRAVIS MAUS,
and, GERALD F. COLUCCI, Tampa
Police Department officers;
CORRECTIONAL MEDICAL SERVICES,
INC., a Missouri corporation;
BENJAMIN MOSQUERA and JOHN
MUBANG, physician employees of
Correctional Medical Services, Inc.;
THOMAS HALL and WILLIAM FITCH,
officer employees of former defendant
Hillsborough County Sheriff's Office.

    Defendants.

_____/

**CASE NO.  8:03-cv-656-T-23EAJ**

**SECOND AMENDED
COMPLAINT AND DEMAND
FOR JURY TRIAL**



FILED
12-3-03 -
Date
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

## SECOND AMENDED COMPLAINT

    Plaintiff, by and through his undersigned attorneys, sues defendants and alleges:

### PRELIMINARY STATEMENT

    1.  This "Second Amended Complaint" substitutes four previously-identified John

Doe defendants with named individual defendants (two officers of the TPD and two

officers of the HCSO), and joins Correctional Medical Services, Inc. and two of its

physicians as defendants with respect to plaintiff's constitutional medical care claims.  In

light of the Court's order (Dkt. 32) dismissing *with prejudice* those claims against HCSO,

plaintiff has not renamed HCSO as a defendant but reserves the right to appeal that

ruling as future circumstances warrant and governing rules allow.  As to the policy,

35

practice, or custom § 1983 claims against the City, based on discovery to date it deletes the medical care count and clarifies the policy allegations of the excessive-force count.

## JURISDICTION

2  This is an action under 42 U.S.C. § 1983 ("§ 1983") for damages and other appropriate relief arising from excessive force used to effect plaintiff's arrest in violation of his rights under the 4th Amendment, U.S. Constitution and from denials of timely medical care for a night-stick fracture he suffered in that arrest in violation of rights under the 8th and 14th Amendments, U.S. Constitution.  Plaintiff also seeks similar relief for the same actions and inactions of the City of Tampa defendants under companion state tort claims arising from the same facts and events as the § 1983 claims.  Original federal question jurisdiction properly lies in this Court under 28 U.S.C. §§ 1331 and 1343 and the Court has discretion to exercise supplemental or pendent jurisdiction over the companion state tort claims under 28 U.S.C. § 1367.

## PARTIES

3.  Plaintiff Arthur R. Clark, Jr. ("Clark," or "Plaintiff") resided in the City of Tampa where on August 11, 2001, he was arrested pursuant to a warrant issued in connection with misdemeanor, bad check charges.

4.  Defendant City of Tampa ("City"), is a municipality in Florida created under and within the scope of Art VIII, § 2, Florida Constitution, and Florida Statutes, Title XII, Chapters 165 and 166, which by and through its defendant police officers, arrested Clark on August 11, 2001.

5.  Defendant Brian C. Gentry ("Gentry") is a Tampa Police Department ("TPD")

-2-

officer who used physical force in the form of an ASP (flexible metal night stick), the soul of his shoe, and handcuffs to effect Clark's arrest.

6. Defendants Travis Maus ("Maus") and Gerald F. Colucci ("Colucci") are TPD officers who were physically present and standing beside Gentry during Gentry's use of physical force to effect Clark's arrest.

7. Defendant Correctional Medical Services, Inc. ("CMS") is a Missouri corporation that in 2001 was providing medical care and treatment to inmates and detainees within the Hillsborough County Jail system under contract with former defendant Hillsborough County Sheriff's Office ("HCSO") and which was responsible, at least in part, for the timing and nature of the medical treatment Clark received for his broken arm following his arrest and incarceration on August 11, 2001.

8. Defendants Benjamin Mosquera, M.D. ("Mosquera") and John Mubang, M.D. ("Mubang") were physicians employed by CMS who were personally involved in and responsible, at least in part, for the timing and nature of the medical treatment Clark received for his broken arm following his arrest and incarceration on August 11, 2001.

9. Defendants Thomas Hall ("Hall") and William Fitch ("Fitch") were deputy officers with former defendant HCSO who were, respectively, the Facility Commander and Shift Commander at the Falkenburg Road Jail who, among others, refused to grant Clark's pleas for urgent medical treatment for his broken arm.

### STATEMENT OF CLAIM

### (ALLEGATIONS COMMON TO ARREST OR MEDICAL CARE COUNTS)

10. On the evening of August 10, 2001, Clark, his girlfriend, and their apartment

neighbor got into an argument. Clark's neighbor contacted the TPD and reported that Clark had threatened him and had an outstanding warrant for bad check charges.

11 Forewarned by his neighbor to expect the police and not wanting to be arrested, Clark hid when Gentry responded to Clark's apartment. When he failed to find Clark at home, Gentry left.

12. A short time later, another TPD officer knocked on the door to Clark's apartment. In response, Clark immediately fled via their bathroom window on the north side of the dwelling and proceeded down the walkway leading to the back rental units and small fenced yard.

13. When Clark reached the back corner of the dwelling, he confronted Gentry flanked by Maus and Colucci. Each officer was armed and substantially larger than Clark and Gentry had his night stick drawn.

14. At the time he confronted the TPD officers Clark was unarmed and wearing a t-shirt and cut-off jeans.

15. Upon confronting Clark, Gentry ordered Clark to stop and Clark immediately complied with the order.

16. Clark made no further attempts to flee or avoid or resist arrest and neither said nor did anything to indicate either that Clark posed any physical threat to the safety of the officers present or that force of any degree would be required.

17. Instead of handcuffing or simply escorting Clark to jail, Gentry immediately started hitting Clark with his night stick while at the same time shouting to get down.

-4-

Clark instinctively reacted by attempting to shield his head and face from the night-stick blows with his raised his left arm.

18.  Gentry hit Clark multiple times with his night stick. All the blows were unexpected, unwelcome, and unnecessary.

19.  Several of Gentry's blows hit Clark with such force that one or more cut his skin and fractured the bone in Clark's defensively-raised left forearm and another herniated the thigh muscle on Clark's left leg. Other blows caused lumps or bruises.

20.  Maus and Colucci made no attempt to prevent or stop the night-stick beating of Clark by Gentry despite having the opportunity, legal duty, right, and means to do so.

21.  After breaking Clark's arm, Gentry continued to hit Clark with a night stick, knocking Clark down to his knees. With the soul of his shoe Gentry kicked Clark to the ground face down and handcuffed Clark with hands behind his back.

22.  The degree of force used by Gentry and allowed by Maus and Colucci was excessive and unreasonable and inflicted or allowed to be inflicted with malice, intent to cause injury, or reckless disregard for the rights and ensuing suffering of Clark.

23.  As a direct, proximate, and foreseeable result of the actions of Gentry and inactions of Maus and Colucci, Clark suffered severe and permanent or lasting physical injuries, physical pain, emotional trauma and distress, and mental anguish which injuries were prolonged and aggravated by failing to receive critical and necessary medical care and treatment in a timely fashion for his severely fractured left arm.

24.  The 4th Amendment, U.S. Constitution, among other things, prohibits the use of excessive force by police officers in arresting or seizing persons.

25.  § 1983 provides a remedy for violating the 4th Amendment rights of arrestees to be free from excessive force when being arrested by municipal police officers.

26.  A police officer's intentional use or allowed use of unjustified force against a person and his will in effecting that person's arrest constitutes a civil and criminal battery.

27.  A police officer's neglect in failing to intervene and prevent or stop the unjustified application of force against a person in effecting that person's arrest constitutes civil and culpable criminal negligence.

28.  Clark complained to Gentry, Maus, and Colucci of pain and a broken arm and requested that they take him to a hospital so that he could receive necessary medical attention and treatment. They refused his request.

29.  In response to the injuries suffered by Clark and his request or complaints, one or more of the TPD officers on the scene requested the dispatch of emergency paramedics with an ambulance service. As a result of that request, an ambulance driver and paramedic with Americare Ambulance Service were dispatched to Clark's apartment.

30.  The Americare Ambulance Service paramedic who examined and spoke with Clark doused the cut area with alcohol but did not splint or otherwise provide any medical treatment at the scene to Clark for his broken arm nor did his unit transport Clark to a hospital for x-rays and treatment as Clark requested.

31.  Still handcuffed with his hands behind his back, Clark was transported to the Orient Road Jail by the TPD for booking.

32.  During the booking process at the Orient Road Jail as well as during his

initial judicial hearing, Clark reported and complained about his broken arm and pain and requested medical attention.

33.  Clark was first seen by non-physician medical personnel at the Orient Road Jail on August 11, 2001. They wrapped his broken arm in an ace bandage and gave him ice and Motrin.

34.  Despite ongoing verbal complaints of a broken arm and pain made by Clark to jail detention staff, it was not until Monday, August 13, 2001, that his swollen and throbbing left arm was x-rayed at the Orient Road Jail facility.  The x-rays were obvious (and seen by Clark): the bone was fractured in two widely displaced parts.

35.  Aware of Clark's broken arm and x-rays, CMS, Mosquera and Mubang referred Clark to see an orthopedic specialist at a satellite clinic of Tampa General Hospital for initial and necessary treatment of his broken arm: examination by a physician, setting of fracture and immobilizing of area in cast.

36.  Between August 11 and 23, Clark made repeated verbal and written requests of CMS and HCSO urgently seeking necessary medical treatment for his broken arm.  In response to at least two of those requests (written inmate grievances), Hall and Fitch failed to do anything to expedite Clark's requested and necessary treatment.

37.  On August 24, 2001, Clark was finally taken to a clinic operated by Tampa General Hospital for examination by an orthopedic specialist.  She was aghast over the delay in treatment and immediately made arrangements to place his swollen, painful broken arm in a long, above-elbow plaster cast.

38.  CMS, Mosquera, Mubang, Hall, and Fitch, had the authority and means for

effecting Clark's receipt of prompt and needed medical treatment for a serious condition but intentionally or with deliberate indifference denied him that care for nearly two (2) weeks.

39. As a result of being denied proper medical care and treatment in timely fashion (examination by a doctor, setting of the fracture, and immobilizing the fractured arm in a permanent cast) Clark had to endure additional and prolonged pain and discomfort and the fracture, which had started to fuse, did so improperly leaving a lump on his arm and Clark to experience frequent discomfort and pain even long after the permanent cast had been removed. Future medical treatment will likely be required.

40. As an arrestee in police custody by the City or as a detainee or sentenced prisoner in Hillsborough County jails, Clark had the rights under the due process clause of the 14th Amendment or 8th Amendment, U.S. Constitution, enforceable through § 1983, not to have defendants intentionally disregard, or act with deliberate indifference to his needs for medical care for his severely-broken arm.

41. The complained of actions or inactions of the individual defendants constituted behavior and conduct falling within the scope of their employment.

42. The complained of actions or inactions of defendants constituted state action or matters under color of law within the scope and meaning of § 1983 and the 14th Amendment, U.S. Constitution.

43. Clark has satisfied all conditions precedent to pursuit of his pendent state claims involving the City defendants pursuant to the provisions of Fla. Stat. § 768.28.

(ARREST COUNTS: COUNTS I-VIII)

-8-

## COUNT I
### § 1983 CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES AGAINST GENTRY FOR USE OF EXCESSIVE FORCE IN EFFECTING ARREST

44. Clark realleges ¶¶ 2-6, 10-31, 39-43.

45. Gentry intentionally, maliciously, wantonly, and recklessly used excessive force in arresting Clark causing plaintiff physical, mental, and emotional injuries.

## COUNT II
### § 1983 CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES AGAINST MAUS AND COLUCCI FOR FAILING TO PROTECT CLARK AGAINST USE OF EXCESSIVE FORCE

46. Clark realleges ¶¶ 2-6, 10-31, 39-43.

47. Defendants Maus and Colucci intentionally, wantonly, and recklessly allowed Gentry to use excessive force in effecting Clark's arrest causing plaintiff physical and emotional injuries.

## COUNT III
### § 1983 CLAIM FOR COMPENSATORY DAMAGES AND OTHER APPROPRIATE RELIEF AGAINST CITY FOR ITS USE OF EXCESSIVE FORCE PURSUANT TO OFFICIAL POLICY AND PRACTICE OR CUSTOM

48. Clark realleges ¶¶ 2-6, 10-31, 39-43.

49. The actions or inactions of the individual defendant TPD officers with respect to the nature and degree of force used or allowed to be used to effect Clark's arrest were caused and sanctioned by official City policies and practices or customs including, but not necessarily limited to City policies failing to: mandate intervention by bystander officers when confronted by a fellow officer's use or intention to use excessive and unnecessary force in effecting an arrest; and ban use of excessive or deadly force in effecting arrests for non-violent misdemeanors of persons who pose no threat of harm.

50. As a direct or foreseeable result of such sanctioned actions and inactions in effecting this misdemeanor arrest, Clark suffered physical, mental, and emotional injuries.

## COUNT IV
### § 1983 CLAIM FOR COMPENSATORY DAMAGES AND OTHER APPROPRIATE RELIEF AGAINST CITY FOR CAUSING THE USE OF EXCESSIVE FORCE DUE TO FAILING TO TRAIN AND SUPERVISE ITS OFFICERS

51. Clark realleges ¶¶ 2-6, 10-31, 39-43.

52. The City knew or should have known that proper and adequate training and supervision of its police officers was needed in order to reduce the risk, or avoid the use of excessive force by TPD officers in effecting misdemeanor or other arrests.

53. The actions or inactions of the individual defendant TPD officers in effecting Clark's arrest were caused by the City's failure to train and supervise them adequately and properly with respect to the nature and degree of force appropriate and necessary in making such misdemeanor arrests.

54. As a direct or foreseeable result of such omissions or inadequacies in training and supervision of TPD officers with respect to the use of force in effecting misdemeanor arrests, Clark was the victim of excessive force during his arrest and suffered physical, mental, and emotional injuries.

## COUNT V
### STATE BATTERY CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES AGAINST INDIVIDUAL TPD OFFICER DEFENDANTS FOR INTENTIONALLY USING OR ALLOWING TO BE USED EXCESSIVE FORCE IN ARREST

55. Clark realleges ¶¶ 2-6, 10-31, 39-43.

56. In effecting Clark's arrest, Gentry intentionally used, and Maus and Colucci

-10-

intentionally allowed to be used, an unreasonable and unnecessary degree of force upon Clark's body without Clark's consent or approval.

57.  The degree of force used and allowed to be used upon Clark's body in effecting his misdemeanor arrest was not justified under Fla. Stat. § 776.05 or otherwise permissible under Florida law, constituted a civil battery, violated one or more of the provisions of Fla. Stat. §§ 784.03-784.045, and caused Clark to suffer physical, mental, and emotional injuries.

## COUNT VI
## PENDENT STATE NEGLIGENCE CLAIM FOR COMPENSATORY DAMAGES AGAINST DEFENDANT MAUS AND COLUCCI

58.  Clark realleges ¶¶2-6, 10-31, 39-43.

59.  Maus and Colucci negligently failed to intercede and prevent or stop the unjustified force used by Gentry in effecting Clark's arrest which negligence directly or foreseeably caused Clark to suffer physical, mental, and emotional injuries.

60.  The degree of negligence manifested by Maus and Colucci in failing to prevent or stop the unjustified force inflicted upon Clark by Gentry was culpable and constituted a violation of Fla. Stat. § 784.05.

## COUNT VII
## PENDENT STATE BATTERY AND NEGLIGENCE CLAIMS FOR DAMAGES AND OTHER APPROPRIATE RELIEF AGAINST THE CITY FOR THE ACTIONS OR INACTIONS OF DEFENDANT TPD OFFICERS UNDER PRINCIPLES OF RESPONDEAT SUPERIOR

61.  Clark realleges ¶¶ 2-6, 10-23, 26-31, 41, 43, 56-57, 59-60.

62.  Under state tort principles of *respondeat superior*, the City is liable for the actions or inactions of its defendant police officers with respect to the degree of force

-11-

used or allowed to be used in effecting Clark's arrest.

## COUNT VIII
### PENDENT STATE NEGLIGENCE CLAIMS FOR DAMAGES AND OTHER APPROPRIATE RELIEF AGAINST THE CITY FOR FAILING TO TRAIN AND SUPERVISE ITS OFFICERS REGARDING THE USE OF FORCE IN EFFECTING ARRESTS

63.  Clark realleges ¶¶ 2-6, 10-27, 41, 43.

64.  The City knew or should have known that proper and adequate training and supervision of its police officers was needed in order to reduce or avoid the use of excessive force in effecting arrests.

65.  The City owed Clark and other misdemeanor arrestees a legal duty to train and supervise its police officers properly and adequately in order to reduce risk, or avoid the use of unjustified force in effecting arrests.

66.  The actions or inactions of the individual defendant TPD officers in effecting Clark's arrest were caused by the City's failure to train and supervise adequately and properly its police officers with respect to the nature and degree of force appropriate and necessary in making such misdemeanor arrests.

67.  As a direct or foreseeable result of such omissions or inadequacies in training or supervision of the City's police officers with respect to the use of force in effecting misdemeanor arrests, Clark was the victim of excessive force during his arrest and suffered severe physical injuries, physical pain and suffering, emotional distress and mental anguish.

(MEDICAL CARE COUNTS: COUNT IX-XIII)

COUNT IX
§ 1983 CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES
AGAINST DEFENDANT TPD OFFICERS FOR
DENYING CLARK NEEDED MEDICAL CARE

68.  Clark realleges ¶¶ 2-42.

69.  Defendant TPD officers knew of Clark's fractured arm or his complaints of a

fractured arm.

70.  When paramedics called to the scene failed to provide necessary and obvious

treatment for Clark's broken arm or to transport Clark, defendant TPD officers should

have followed City policies and honored Clark's repeated requests to be taken to a

hospital or to see a doctor but instead transported the injured Clark to Orient Road Jail for

booking.

71.  As a direct, proximate, or foreseeable result of the decisions of defendant TPD

officers not to honor Clark's request for emergency room care and treatment for his

fractured arm, Clark suffered prolonged, enhanced, and aggravated physical, mental, and

emotional injuries awaiting necessary treatment once in the county jail system.

COUNT X
§ 1983 CLAIM FOR COMPENSATORY DAMAGES AND OTHER
APPROPRIATE RELIEF AGAINST THE CITY FOR DENYING CLARK
MEDICAL CARE DUE TO FAILING TO TRAIN OR SUPERVISE ITS OFFICERS

72.  Clark realleges ¶¶ 2-42.

73.  The City knew or should have known that proper and adequate training and

supervision of its police officers was needed in order to secure appropriate and needed

medical care and to avoid deliberate indifference to the serious medical conditions of

-13-

arrestees encountered or caused by its police officers.

74. The City owed Clark and other misdemeanor arrestees a legal duty to train and supervise its police officers properly and adequately in order that its police officers would not respond to medical emergencies they created or encountered with deliberate indifference to the treatment or other urgent medical needs of the injured or ill.

75. The actions or inactions of the individual defendant TPD police officers in failing to take or arrange the transport of Clark to a hospital or doctor for necessary treatment of the arm they had fractured or allowed to be fractured constituted deliberate indifference to a serious medical condition and was caused by the City's failure to train and supervise adequately and properly its police officers with respect to such emergencies.

76. As a direct or foreseeable result of such omissions or inadequacies in training or supervision of the City's police officers with respect to responding to the serious medical needs of arrestees, Clark suffered prolonged, enhanced, and aggravated physical, mental, and emotional injuries awaiting proper and necessary medical treatment.

COUNT XI
§ 1983 CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES
AGAINST HALL AND FITCH FOR DENYING CLARK MEDICAL CARE

77. Clark realleges ¶¶ 2, 7-9, 19, 23, 31-43.

78. Hall and Fitch intentionally, wantonly, recklessly or with deliberate indifference to the needs and pleas by Clark for medical treatment for his broken arm while detained or incarcerated denied Clark medical care for his serious condition in violation of the due process clause of the 14th Amendment, U.S. Constitution.

-14-

79.  The actions or inactions of Hall and Fitch in depriving Clark of prompt medical care caused him to suffer physical and emotional injury.

## COUNT XII
### § 1983 CLAIMS FOR COMPENSATORY AND PUNITIVE DAMAGES AND OTHER APPROPRIATE RELIEF AGAINST MOSQUERA AND MUBANG FOR DENYING CLARK NEEDED MEDICAL CARE

80.  Clark realleges ¶¶ 2, 7-9, 19, 23, 31-43.

81.  A detainee or inmate with a fracture of the ulna (forearm bone opposite the thumb) has a serious medical need for which he or she requires urgent and appropriate medical attention and care consisting at a minimum of examination by a doctor of the fractured area and x-rays of the fracture, setting of the bone (proper alignment) by a doctor, and immobilizing of the fracture in a cast or other similar device.

82.  Doctors Mosquera and Mubang knew Clark's broken arm required urgent medical treatment and had the means or authority for promptly securing same for Clark.

83.  Doctors Mosquera and Mubang responded to the serious medical needs of Clark with deliberate indifference causing Clark to wait for over ten (10) days before receiving urgently needed medical treatment for his broken arm.

84.  As a direct or foreseeable result of the deliberate indifference of doctors Mosquera and Mubang, Clark was denied needed medical care and suffered prolonged, enhanced, and aggravated physical, mental, and emotional injuries.

## COUNT XIII
### § 1983 CLAIM FOR DAMAGES AND OTHER APPROPRIATE RELIEF AGAINST CMS FOR DENYING CLARK NEEDED MEDICAL CARE

85.  Clark realleges ¶¶ 2, 7-9, 19, 23, 31-43, 81-84.

-15-

86. Under principles of *respondeat superior* CMS is liable for the actions or inactions of its medical personnel and doctors Mosquera and Mubang that caused, with deliberate indifference, a delay of nearly two weeks in Clark's receipt of urgently needed medical attention and treatment for his broken arm.

87. The policies and procedures adopted by the management of CMS for responding to the serious medical needs of inmates or detainees in the Hillsborough County jail system in 2001 were deficient. Those policies and procedures of CMS allowed the delivery of urgently needed medical treatment to be dictated by routine scheduling with outpatient clinics and financial considerations rather than potentially more costly but more prompt alternatives for effecting the delivery of such medical treatment.

88. As a direct or foreseeable result of CMS's sanctioned and constitutionally-deficient medical care policies and practices for addressing serious conditions of its inmates or detainees, Clark was denied needed medical care and suffered prolonged, enhanced, and aggravated physical, mental, and emotional injuries.

(PRAYER FOR RELIEF)

Wherefore, Clark respectfully requests:

A. this Court to exercise jurisdiction over his pendent state claims pursuant to 28 U.S.C. § 1367;

B. trial by jury on all issues so triable as a matter of right;

C. entry of judgment by this Court awarding Clark:

    1. Compensatory damages against and among all defendants in such

-16-

amounts as the jury may determine and apportion;

      2.  Punitive damages against Gentry, Maus, Colucci, Hall, Fitch, Mubang,

Mosquera, and CMS in such amounts as the jury may determine and apportion;

      3.  Such injunctive, declaratory or other relief against the City with respect

to its policies and procedures regarding the degree of force used in effecting misdemeanor

arrests as equity and justice warrant; and,

      4.  Taxable costs of this litigation including reasonable attorneys' fees

pursuant to 42 U.S.C. § 1988.

| | |
|---|---|
| Jeffrey H. Klink (FBN: 151657) | J. Michael Shea (FBN: 120989) |
| Jeffrey H. Klink, P.A. | Shea & Associates, P.A. |
| P. O. Box 1165 (419 W. Platt St.) | 419 West Platt Street |
| Tampa, FL 33601-1165 | Tampa, FL 33606-2243 |
| TEL: 813.258.0288 | TEL: 813.251.0733 |
| FAX: 813.258.0346 | TEL: 813.831.8990 |

Trial Counsel for Plaintiff, Arthur R. Clark, Jr.

By: _____

Jeffrey H. Klink

## Certificate of Service

      I CERTIFY that a true copy of the Second Amended Complaint was
provided by U.S. mail this 28th day of November, 2003, to each of the following:

Peter M. Walsh, Esquire
Stacey L. Easterling, Esquire
One Capital Center - Suite 304
696 First Avenue North
St. Petersburg, FL 33701
COUNSEL FOR DEFENDANT CITY OF TAMPA

Gwendolyn R. Hollstrom, Esquire
Donald A. Smith, Jr., Esquire

SMITH & TOZIAN, P.A.
109 North Brush Street
Tampa, FL 33602
COUNSEL FOR GENTRY IF NOT ALSO MAUS AND
COLUCCI

Ellen Leonard, Esquire
P. O. Box 3371
Tampa, FL 33601-3371
COUNSEL FOR FORMER DEFENDANT HCSO IF NOT
ALSO DEFENDANTS HALL AND FITCH

Ron Chapman, Esquire
Chapman & Associates
Suite 350
40950 Woodward Avenue
Bloomfield Hills, MI 38404
CORPORATE COUNSEL FOR CMS IF NOT ALSO
MUBANG AND MOSQUERA

J. H. Klink